**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-4865**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

DARRIUS ANDREZ KING,

Defendant – Appellant.

Appeal from the United States District Court for the District of South Carolina, at Greenville.  Donald C. Coggins, District Judge.  (6:19-cr-00159-DCC-1)

Argued:  October 27, 2023                          Decided:  January 26, 2024

Before DIAZ, Chief Judge, WILKINSON, Circuit Judge, and Robert S. BALLOU, United States District Judge for the Western District of Virginia, sitting by designation.

Affirmed by published opinion. Judge Ballou wrote the opinion, in which Chief Judge Diaz and Judge Wilkinson joined.

**ARGUED:**  Bradley M. Kirkland, BRADLEY M. KIRKLAND, LLC, Columbia, South Carolina, for Appellant.  Elizabeth Coble Major, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee. **ON BRIEF:**  Adair F. Boroughs, United States Attorney, Cate E. Cardinale, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

BALLOU, District Judge:

Darrius Andrez King pled guilty to possessing a firearm as a felon after he fired a handgun into the air outside a crowded nightclub. During the plea colloquy, the district court did not advise King of the significance of supervised release—that if he were to violate, he could be subject to additional prison time above the statutory maximum period allowed for the underlying offense. We asked the parties to brief the question of whether Federal Rule of Criminal Procedure 11 requires such an advisement, and if it does, whether its omission here requires us to vacate King's guilty plea. We conclude that Rule 11 does require the district court to advise defendants who intend to plead guilty about the significance of supervised release. However, its omission here did not affect King's substantial rights, so we decline to vacate the plea.

I.

On the evening of November 3, 2018, King was sitting in the back of a car in the parking lot of a nightclub in Mauldin, South Carolina, after he and others were asked to leave the club. At another's behest, King stepped out of the vehicle, raised a .40 caliber handgun above his head, and fired it into the air. Club security officers detained King, who admitted to possessing the handgun. Law enforcement later traced the handgun and discovered that it had been stolen and trafficked into South Carolina. King was convicted in 2014 of pointing a firearm at another person in violation of S.C. Code Ann. § 16-23-410, a felony. J.A. 92.

King was indicted on February 12, 2019, in the District of South Carolina on one count of possessing a firearm having previously been convicted of a felony in violation of

18 U.S.C. § 922(g)(1). J.A. 9–11. King pled guilty without a plea agreement on April 8, 2019. During the plea colloquy, the government, at the district court's request, informed King of the charge and associated potential penalties. The government advised King of the elements of the offense and accurately stated that the "maximum penalty is imprisonment for up to ten years, a fine of $250,000, supervised release of three years, and a special assessment of $100." J.A. 26–27. The district court asked King if he "listen[ed] carefully to the information presented by the prosecutor" as to the charge, its elements, and its potential penalties, to which King replied, "Yes, sir." J.A. 27. During the plea colloquy, the court did not advise King of the effect of supervised release or that a violation of the terms of supervised release could result in a total maximum term of imprisonment in excess of the statutory maximum for the offense. The government also presented a factual basis for the plea, describing King's actions the night of November 3, which King admitted as true. J.A. 48. At no point did King raise a challenge during the colloquy or attempt to withdraw his plea.

The presentence report prepared in anticipation of sentencing placed King in a criminal history category of VI based on his prior convictions and the fact that he was on state supervision when he committed the offense at issue here. J.A. 93. The report also outlined the mandatory and recommended conditions of supervision and noted that "[r]evocation of supervised release is mandatory" if King committed too many violations. J.A. 98–100, 103.

3

The district court sentenced King on August 8, 2019.[1] The court calculated King's guideline range as 130 to 162 months. However, at the time, the statutory maximum for King's offense was 120 months. 18 U.S.C. § 924(a)(2) (2018) (amended 2022).[2] The district court thus concluded that the guidelines recommended a 120-month term of incarceration with one to three years of supervised release. J.A. 58. The court heard King's allocution, heard from his counsel and counsel for the government, and provided an individualized assessment of King. The district court sentenced King to 110 months of incarceration and a three-year term of supervised release. With respect to supervised release, the court imposed one special condition and stated that while "on supervised release, [King] shall comply with all mandatory and standard conditions of supervision." J.A. 66–67. King did not raise any objections during sentencing.

The district court received a handwritten letter from King on November 20, 2019, requesting materials for an appeal, which it construed as a notice of appeal. The government waived any challenge to the timeliness of King's appeal.

---

[1] In June 2019, between the April 8 change of plea hearing and August 8 sentencing hearing, the Supreme Court decided *Rehaif v. United States*, which held that § 922(g) requires that a defendant know he is a prohibited person at the time he possesses a firearm or ammunition. 139 S. Ct. 2191, 2195–96 (2019). At sentencing, on the government's request, the district court inquired of King, under oath, whether he knew at the time of the alleged offense that he had previously been convicted of a felony. J.A. 55–56. King responded, "Yes, sir. I did." J.A. 56.

[2] Congress amended § 924 in 2022 to increase the maximum potential term of incarceration for § 922(g) from 10 years to 15 years. 18 U.S.C. § 924(a)(8). That increase does not apply to King because he was charged and adjudged guilty before the amendment came into effect.

4

II.

King's counsel filed an *Anders* brief to this court, the process by which court-appointed counsel for a criminal defendant moves to withdraw from his client's appeal because he does not believe it presents a nonfrivolous legal claim. *See Anders v. California*, 386 U.S. 738, 744 (1967). We concluded, however, that the appeal presented an issue that would benefit from adversarial presentation, so we asked the parties to brief the question of whether the district court's failure to advise King about the significance of supervised release during the plea colloquy requires a vacatur of his guilty plea. King responded in the affirmative, contending that the district court's failure to advise him of the effect of supervised release—specifically, that he could face more than the statutory maximum period of incarceration if he were to commit a supervised release violation—affected his substantial rights.

A.

King did not contemporaneously object to the district court's failure to advise him of the effect of supervised release, nor has he sought to withdraw his plea of guilty at any time since he entered it, so we review only for plain error. *United States v. Aplicano-Oyuela*, 792 F.3d 416, 422 (4th Cir. 2015) ("[W]hen a defendant contests the validity of a guilty plea that he did not seek to withdraw, we . . . review that challenge solely for plain error.") (citing *United States v. Martinez*, 277 F.3d 517, 524, 527 (4th Cir. 2002)); *United States v. Vonn*, 535 U.S. 55, 58–59 (2002) (holding that plain error review applies to unpreserved Rule 11 objections). Plain error not brought to the district court's attention can be reviewed where the defendant establishes that "(1) there is . . . error;

5

(2) the error is plain; and (3) the error affects his substantial rights." *Aplicano-Oyuela*, 792 F.3d at 422 (citing *United States v. Olano*, 507 U.S. 725, 731–32 (1993)). Even if the defendant satisfies this three-prong test, we exercise our discretion to remedy the error only if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732. The defendant bears the burden of satisfying each element of the plain error standard. *United States v. Massenburg*, 564 F.3d 337, 343 (4th Cir. 2009) (citing *Vonn*, 535 U.S. at 59).

Federal Rule of Criminal Procedure 11 sets out the advisements that the district court must give to a defendant entering a plea of guilty. "For a guilty plea to be constitutionally valid, a defendant must be made aware of all the direct, but not the collateral, consequences of his plea." *United States v. Nicholson*, 676 F.3d 376, 381 (4th Cir. 2012) (quoting *Meyer v. Branker*, 506 F.3d 358, 367–68 (4th Cir. 2007)). Direct consequences have a "definite, immediate and largely automatic effect on the range of the defendant's punishment," whereas collateral consequences are those for which the result is "uncertain or beyond the direct control of the court." *Id.* In relevant part, the current version of Rule 11 mandates that the district court advise the defendant of "any maximum possible penalty, including imprisonment, fine, and term of supervised release," attached to the offense to which the defendant intends to plead guilty. Fed. R. Crim. P. 11(b)(1)(H).

The text of Rule 11 has changed over the years to accord with courts' interpretations of the Rule's mandates. In *Moore v. United States*, we recognized that special parole is a "significant penalty" because the defendant could "serve his original sentence plus a

6

substantial additional period" if he violates his conditions of release.[3] 592 F.2d 753, 755 (4th Cir. 1979). So we joined several of our sister circuits in holding that "[e]xplanation of special parole in open court is . . . essential to comply with the Rule's mandate that the defendant be informed of the maximum possible penalty provided by law," even though the Rule did not explicitly include such a requirement. *Id.*; s*ee also United States v. Eaton*, 579 F.2d 1181, 1182 (10th Cir. 1978) (per curiam); *Richardson v. United States*, 577 F.2d 447, 452 (8th Cir. 1978); *United States v. Del Prete*, 567 F.2d 928, 929 (9th Cir. 1978) (per curiam); *United States v. Watson*, 548 F.2d 1058, 1061 (D.C. Cir. 1977); *United States v. Yazbeck*, 524 F.2d 641, 643 & n.1 (1st Cir. 1975) (per curiam).

Rule 11 was amended shortly thereafter to state that the district court must inform the defendant of "the maximum possible penalty provided by law, including *the effect of any special parole term.*" Fed. R. Crim. P. 11(c)(1) (effective Aug. 1, 1982) (emphasis added). The Advisory Committee recognized that the insertion of this language did "not make any change in the law, as the courts are in agreement that such advice is presently required by Rule 11." Fed. R. Crim. P. 11 advisory committee's note to 1982 amendment. We continued to hold that a district court's failure to explain the significance of supervised release was error. *United States v. Good*, 25 F.3d 218, 220 (4th Cir. 1994); *United States v. Thorne*, 153 F.3d 130, 133 (4th Cir. 1998).

---

[3] Supervised release succeeded special parole. *United States v. Good*, 25 F.3d 218, 220 n.1 (4th Cir. 1994).

In 2002, Rule 11 changed again. This time, the amendment occurred as part of "the general restyling of the Criminal Rules to make them more easily understood and to make style and terminology consistent throughout the rules." Fed. R. Crim. P. Rule 11 advisory committee's note to 2002 amendment. The amendment changed the language of the relevant advisement to its current form to require the district court to inform the defendant of "any maximum possible penalty, including imprisonment, fine, and term of supervised release." Fed. R. Crim. P. 11(b)(1)(H). The amendment, by omitting the language requiring the court to inform the defendant of "the effect of" supervised release, effectively mirrors the text of the advisement related to supervised release when we decided *Moore*. The Advisory Committee Notes state that the 2002 amendment to Rule 11(b)(1) sought to "expand upon the incomplete listing in the current rule of the elements of the 'maximum possible penalty.'" They do not explain the committee's decision to omit the "effect of" language from the supervised release advisement but the general explanation for the 2002 amendment advises that all "changes are intended to by stylistic only" unless specifically explained.

## B.

The first question before us is whether the failure to advise the defendant of the "effect of" supervised release is error even though Rule 11 no longer includes language mandating such an advisement. We answer yes.

*Moore* remains good law in this Circuit, and its rationale remains persuasive—even more so since the 2002 amendment. 592 F.2d at 755. In *Moore*, Rule 11 at the time did not explicitly require the district court to advise defendants of the significance of special

8

parole. *Id.* We found that despite the absence of specific language giving rise to such a requirement, courts were nonetheless mandated to give it. *Id.* Pointing to "the possibility that a defendant may have to serve his original sentence plus a substantial additional period," we concluded that "[e]xplanation of special parole in open court is therefore essential to comply with the Rule's mandate that the defendant be informed of the maximum possible penalty provided by law." *Id.* (internal quotations omitted).

Today we reiterate our holding in *Moore*—that Rule 11 requires the district court to explain the significance of supervised release during a guilty plea colloquy. The specter of additional prison time upon a supervised release violation above the statutory maximum allowed for the underlying offense certainly constitutes a part of "any maximum possible penalty." Fed. R. Crim. P. 11(b)(1)(H); *Moore*, 592 F.2d at 755. As the Advisory Committee recognized, the changes to Rule 11(b)(1) were meant to "expand upon the incomplete listing . . . of the elements of the 'maximum possible penalty,'" not shrink the pool of required advisements. Fed. R. Crim. P. 11(b)(1) advisory committee's note to 2002 amendment. We conclude that Rule 11 mandates that the district court advise a defendant who intends to plead guilty of the effect of supervised release.

### C.

Our inquiry does not end in concluding that the district court should have advised King of the effect of supervised release during the plea colloquy. We will only vacate King's guilty plea if this error affected his substantial rights. We find that King's substantial rights were not affected because the record does not show that he would have declined to plead guilty if he had been advised about the significance of supervised release.

1.

The substantial rights inquiry has taken multiple forms in our cases. In this case, it is most apt to ask whether there was a reasonable probability that, but for the failure to advise King of the effect of supervised release, he would not have entered the plea. *Aplicano-Oyuela*, 792 F.3d at 427. This inquiry simplifies more expanded substantial rights formulations that we have applied in the past. In *Thorne*, for example, we said that the question of whether substantial rights were violated involves review of "(1) what the defendant actually knows, based on an affirmative indication in the record, at the time he pleads guilty; (2) what information would have been added to the defendant's knowledge by compliance with Rule 11; and (3) how the additional or corrected information would likely have affected the defendant's decision." 153 F.3d at 133 (citing *United States v. Goins*, 51 F.3d 400, 402 (4th Cir. 1995)). In *Good*, we said that a defendant's substantial rights were not violated if "the combined sentence of incarceration and supervised release actually received by the defendant is less than the maximum term he was told he could receive." 25 F.3d at 220 (citing *Moore*, 592 F.2d at 756). The but-for inquiry allows us to consider the factors identified in *Thorne* and *Good* as part of a holistic review of the circumstances that led to King's decision to plead guilty.

The but-for framing is supported by Supreme Court guidance. *Greer v. United States*, 141 S. Ct. 2090, 2096–98 (2021). In *Greer*, the Supreme Court addressed the plain error standard in the Rule 11 context, stating that the question of whether an error affects substantial rights "generally means that there must be 'a reasonable probability that, but for the error, the outcome of the proceeding would have been different.'" *Id.* at 2096

(quoting *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904–05 (2018)). Specifically, the defendant who pled guilty in *Greer* had to show that "if the District Court had correctly advised him . . . there is a 'reasonable probability' that he would not have pled guilty." *Id.* (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004)).

2.

King has not met his burden to show that if the district court had advised him of the effect of supervised release, he would not have pled guilty. It is true that King could serve an additional period of incarceration above the statutory maximum allowed for the underlying offense if he violates his supervised release. Specifically, King was sentenced to 110 months and could serve an additional 24 months of incarceration for a supervised release violation. 18 U.S.C. § 3583(e)(3).

Yet, there is no indication that, if given the opportunity, King would attempt to withdraw his plea because of the error and proceed to trial.[4] In a similar setting, we concluded that "the fact that [the defendant] made no effort to withdraw his guilty plea . . . is compelling 'evidence that he would have entered the plea regardless.'" *Aplicano-Oyuela*, 792 F.3d at 427 (quoting *Massenburg*, 564 F.3d at 344).

Moreover, the case against King is strong. King, knowing that he had previously been convicted of a felony, fired a handgun into the air in the parking lot of a night club. These facts, which King admitted when questioned by the club's security officers, meet the

---

[4] At oral argument, King's counsel could not state whether King intended to withdraw his plea, but he contended that King did not get any "benefit" for pleading guilty.

11

elements required for a violation of 18 U.S.C. § 922(g)(1), the offense with which King was charged and to which he pled guilty. *See Massenburg*, 564 F.3d at 344 ("Under these circumstances, we think we can legitimately question what [the defendant] would have to gain by going to trial.") (citing *Dominguez Benitez*, 542 U.S. at 85).

Weighed together, and in light of the absence of any attempt to withdraw his plea, we conclude that King's substantial rights were not violated.

### III.

The district court erred when it did not advise King of the effect of supervised release during the plea colloquy. However, this error did not affect King's substantial rights, so we affirm the judgment of the district court.[5]

*AFFIRMED*

---

[5] We have examined the issue raised in the original *Anders* brief and conclude that it lacks merit. Furthermore, in accordance with our obligations under *Anders*, 386 U.S. at 744, we have reviewed the entire record in this case and find no reversible error.